UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEROME CEASAR ALVERTO,<br><br>Plaintiff,<br><br>v.<br><br>MARGARET GILBERT, MELIDA FERRELL, BLUMBERG,<br><br>Defendants. | CASE NO. 3:18-CV-05573-RJB-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: June 21, 2019 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). Dkt. 18.

After reviewing the relevant record, the Court finds Plaintiff Jerome Ceasar Alverto failed to overcome Defendants' summary judgment showing that there is no genuine issue of material fact regarding his Eighth Amendment failure to protect claims against Defendants Margaret Gilbert, Melida Ferrell, and Don Blumberg. Plaintiff has also failed to overcome Defendant Ferrell's summary judgment showing that there is no genuine issue of material fact on Plaintiff's First Amendment retaliation claim against her. Moreover, Plaintiff has failed to state any

REPORT AND RECOMMENDATION - 1

claim of violation of the Washington State Constitution. Therefore, the Court recommends Defendants' Motion (Dkt. 18) be granted and this case be closed.

## I. Background

Plaintiff, an inmate currently housed at Monroe Correctional Complex, alleges Defendants violated his Eighth and First Amendment rights while he was housed at Stafford Creek Corrections Center ("SCCC"). Dkt. 6. Plaintiff contends Defendants Gilbert, Ferrell, and Blumberg failed to protect Plaintiff from a physical altercation with another inmate after he notified them that he received threats. *Id.* Plaintiff further maintains Defendant Ferrell retaliated against him for seeking medical documents related to the altercation. *Id.* In addition, Plaintiff makes brief statements that he is suing Defendants for violating his rights under the Washington State Constitution. *Id.*

Defendants filed the Motion on March 18, 2019. Dkt. 18. Plaintiff filed a Response to the Motion on April 2, 2019. Dkt. 24. With the Response, Plaintiff filed a Motion to File Excess Pages. *See* Dkt. 24, p. 72. As Plaintiff's Response is within the page limits for briefs in opposition to motions for summary judgment, the Motion to File Excess Pages (Dkt. 24, p. 72) is denied as moot. *See* Local Civil Rule 7.

On April 12, 2019, Defendants filed a Reply. Dkt. 27. After the Court granted-in-part Plaintiff's motions to supplement the record, the Motion came ready for consideration on May 10, 2019. *See* Dkt. 35.

## II. Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**III.   Discussion**

Plaintiff alleges Defendants' actions violated his Eighth and First Amendment rights. Dkt. 6. Defendants assert there is no genuine issue of material fact regarding Plaintiff's claims and, accordingly, summary judgment is appropriate. Dkt. 18. The Court agrees. In addition, the Court finds Plaintiff has failed to state any claim under the Washington State Constitution.

A. <u>Failure to Protect</u>

Defendants argue there is no genuine issue of material fact regarding whether they were deliberately indifferent to a substantial risk of harm to Plaintiff. Dkt. 18, pp. 7-10.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging an Eighth Amendment violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

    1. *Evidence*

On July 4, 2016, Plaintiff was involved in a physical altercation with another inmate in Plaintiff's living unit, the "H5 Unit," at SCCC. *See* Dkt. 6,[1] pp. 15-19, 37-38. Plaintiff maintains that prior to the altercation, he informed Defendants that other inmates were threatening to assault him if he sat at tables they had "saved." The act of "saving" a table occurs when an inmate reserves a table for certain inmates and excludes others from sitting at it. *See* Dkt. 19,

---

[1] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1  Gilbert Dec., ¶ 6; Dkt. 20, Blumberg Dec., ¶ 7; Dkt. 21, Ferrell Dec., ¶ 7; Dkt. 22-1, p. 26.
2  Saving tables is common practice at Washington Department of Correction ("DOC") facilities
3  and is considered threatening, as it can lead to physical fights. *See* Dkt. 19, Gilbert Dec., ¶ 6;
4  Dkt. 20, Blumberg Dec., ¶ 7; Dkt. 21, Ferrell Dec., ¶ 7. As such, DOC staff "employ measures to
5  prevent this type of behavior." Dkt. 19, Gilbert Dec., ¶ 6; *see also* Dkt. 20, Blumberg Dec., ¶ 7;
6  Dkt. 21, Ferrell Dec., ¶ 7.

7  Plaintiff asserts that on January 31, 2016, inmate David Fischer approached Plaintiff as
8  he sat at an empty table in the H5 Unit and told Plaintiff to "get up" or Inmate Fischer would
9  "kill" him. Dkt. 6, pp. 8-9, 48-49; *see also* Dkt. 22-1, pp. 28-29. On February 8, 2016, Plaintiff
10  filed a grievance about the incident with Inmate Fischer and the general act of inmates saving
11  tables in the H5 Unit. *See* Dkt. 6, p. 103. On February 12, 2016, non-party DOC staff member D.
12  Dahne responded to Plaintiff's grievance by informing Plaintiff that the Correctional Unit
13  Supervisor ("CUS") of Plaintiff's unit and the Intelligence and Investigations Unit ("IIU") had
14  "been made aware and are observing this issue[.]" *Id.* The CUS, along with other staff assigned
15  to the unit, are "responsible for the safety and security of their unit, and it is [their] responsibility
16  to determine what if any actions [they] will take." Dkt. 20, Blumberg Dec., ¶ 4. The IIU
17  "provides investigative support and assistance[;] collects, evaluates and disseminates intelligence
18  information[;] and trains [DOC] staff on security issues." *Id.* at ¶ 3.

19  On March 1, 2016, Plaintiff was sitting at a table when inmate Joshua Owen approached
20  another inmate at the table. Dkt. 6, p. 10. Plaintiff asserts Inmate Owen threatened to assault the
21  other inmate sitting at the table, who "became intimidated" by Inmate Owen's threats and
22  "surrendered" the table. *Id.* On March 8, 2016, inmate Jarel Elliot approached Plaintiff in the
23  shower, "displayed a shank," and threatened that he and "his friends" would "jump" Plaintiff if
24

1  he continued to sit at their table. *Id.* at p. 11. That same day, Plaintiff sent a kite to Defendant
2  Blumberg describing his interaction with Inmate Elliot. *Id.* at pp. 11-12, 45. Later, on March 11,
3  2016, Plaintiff sent a kite to Defendant Blumberg describing the earlier table incident with
4  Inmate Owen. *Id.* at pp. 10-11, 43.

5       Defendant Blumberg, who was an investigator with the IIU at the time, recalls receiving
6  two or three kites from Plaintiff in February or March of 2016 in which Plaintiff reported threats
7  against him and voiced concerns about inmates saving tables. Dkt. 20, Blumberg Dec., ¶ 6.
8  Defendant Blumberg relayed the information to non-party Ms. McElveary, the Correction Unit
9  Supervisor ("CUS") for Plaintiff's living unit at the time, who would be responsible for
10 determining what actions, if any, she would take for the safety and security of the H5 Unit. *See*
11 *id.* at ¶¶ 4, 6; *see also* Dkt. 22-1, p. 36 (identifying Ms. McElveary as the CUS). Defendant
12 Blumberg maintains he also met with Plaintiff, who "indicated that he was fine and that he did
13 not want to leave the unit." *See* Dkt. 20, Blumberg Dec., ¶ 6. Defendant Blumberg asserts he told
14 Plaintiff "to contact a staff member as soon as possible if anything else occurred." *Id.* Plaintiff,
15 however, contends he never met with Defendant Blumberg. Dkt. 24, p. 10.

16      In response to Plaintiff's reports, Defendant Blumberg began "monitoring" Plaintiff's
17 unit "to specifically watch for signs of threats and table saving." Dkt. 20, Blumberg Dec., ¶ 8.
18 Defendant Blumberg monitored "the unit's surveillance camera monitors during times [Plaintiff]
19 was off work and likely to be in the dayroom." *Id.* Defendant Blumberg would "inform the unit
20 if [he] observed unauthorized behavior in the unit," including "items left unattended on tables."
21 *Id.* Additionally, Defendant Blumberg "monitored the unit through other confidential means." *Id.*
22 Defendant Blumberg "never received information that would indicate Plaintiff was in danger."
23 *Id.*
24

1       On March 18, 2016, Plaintiff mailed a kite and affidavit about the threats he received
2 related to table saving to Defendant Gilbert, who was SCCC's Superintendent at the time. *See*
3 Dkt. 6, pp. 13, 47-54. Plaintiff did not receive a response to these items from Defendant Gilbert,
4 who does not recall receiving these correspondence from Plaintiff. *See id.*; *see also* Dkt. 19,
5 Gilbert Dec., ¶ 4. At the time, Defendant Gilbert did not review every kite or letter from inmates,
6 but instead delegated this task and any response to other DOC employees. *Id.* Defendant Gilbert
7 acknowledges Plaintiff may have "sent the referenced communications," but she does not recall
8 reviewing them and does "not have personal knowledge of any investigation and response." *Id.*
9 Further, although Defendant Gilbert does "not have personal knowledge of [Plaintiff's]
10 allegations," she visited the H5 Unit sometime in 2016 "and verbally informed the offenders that
11 saving tables is not an acceptable behavior." *Id.* at ¶ 6; *see also* Dkt. 22-1, pp. 51-55.

12       On or about May 1, 2016, Defendant Ferrell became the CUS for Unit H5. Dkt. 21,
13 Ferrell Dec., ¶ 2. Plaintiff sent kites to Defendant Ferrell on June 29, 2016 and July 2, 2016
14 about the threats inmates made against him related to table saving and his concerns for his safety.
15 *See* Dkt. 6, pp. 14-15, 58. Defendant Ferrell does not recall receiving any kites from Plaintiff
16 prior to the altercation about table saving or threats against him. *See* Dkt. 21, Ferrell Dec., ¶ 5.
17 Defendant Ferrell contends Plaintiff "did not inform [her] of any threats or concerns to his
18 safety" prior to the physical altercation on July 4, 2016. *Id.* Plaintiff acknowledges that, other
19 than the kites he purports he sent, he did not discuss the threats with Defendant Ferrell, but
20 contends he failed to do so because "she regularly made herself unapproachable/unavailable."
21 Dkt. 24, p. 10.

1    On July 4, 2016, Plaintiff was involved in a physical altercation with Inmate Fischer. *See*
2  Dkt. 6, pp. 15-19; *see also* Dkt. 21-1, pp. 2-3, 7-8, 12-16. Plaintiff maintains Inmate Fischer
3  initiated the altercation because of table saving. *See, e.g.*, Dkt. 6, pp. 15-16.

4    2.   *Analysis as to Defendant Blumberg*

5    As discussed above, Plaintiff must first meet an objective component by showing "he is
6  incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at
7  834. Plaintiff must also meet a subjective component by showing Defendants acted with
8  deliberate indifference to his health or safety. *Id*.

9    Even if Plaintiff's evidence establishes he faced a serious risk of harm, the evidence fails
10 to establish a genuine issue of material fact as to whether Defendant Blumberg acted with
11 deliberate indifference to the risk of harm. Viewing the evidence in the light most favorable to
12 Plaintiff, once Defendant Blumberg became aware of the threats against Plaintiff, he responded
13 by relaying the threats to CUS McElveary, who was responsible for the safety of Plaintiff's unit.
14 *See* Dkt. 20, Blumberg Dec., ¶¶ 4, 6. Additionally, Defendant Blumberg monitored surveillance
15 cameras in Plaintiff's unit on a daily basis for signs of threats and table saving. *Id.* at ¶ 8.
16 Defendant Blumberg specifically monitored the unit during times when Plaintiff was off work
17 and likely to be in the unit. *Id.* Defendant Blumberg moreover alerted staff if he observed signs
18 of table saving. *Id.* Although Defendant Blumberg and Plaintiff dispute whether they met
19 regarding the threats, such a dispute is not material considering the various means Defendant
20 Blumberg utilized to monitor the threats against Plaintiff and his safety in the unit.

21    Given that Defendant Blumberg relayed information about the threats to the individual
22 responsible for the safety of Plaintiff's unit, and that Defendant Blumberg continually monitored
23 the unit for threats against Plaintiff, there is no evidence showing he acted with deliberate
24

indifference or failed to take reasonable steps to protect Plaintiff. *See Farmer*, 511 U.S. at 844 (prison officials who knew of a risk to inmate safety "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"); *see also Abernathy v. Cook*, 172 F.3d 875, at *1 (9th Cir. 1999) (affirming summary judgment in favor of prison officials where the record demonstrated "good faith efforts to investigate [the plaintiff's] concerns about his well-being and . . . reasonable steps to ensure that his safety would not be jeopardized"); *Acker v. Vermeer*, 29 F.3d 630, at *1 (9th Cir. 1994) ("because prison officials took proactive steps in segregating her when they learned of the threats, [the plaintiff's] claim that they were deliberately indifferent to a known risk of harm is deficient").

Accordingly, the undersigned finds there is no genuine issue of material fact regarding Plaintiff's allegation that Defendant Blumberg violated Plaintiff's Eighth Amendment rights by failing to protect him.

### 3. *Analysis as to Defendants Gilbert and Ferrell*

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants Gilbert and Ferrell were aware of a substantial risk to Plaintiff's health or safety prior to the July 4, 2016 altercation. The evidence shows Plaintiff sent a kite and affidavit before the altercation to Defendant Gilbert about the threats against him related to table saving. *See* Dkt. 6, pp. 13, 47-54. But there is no evidence Defendant Gilbert received or reviewed Plaintiff's correspondence. Likewise, the evidence shows Plaintiff sent kites about the threats against him related to table saving to Defendant Ferrell on June 29, 2016 and July 2, 2016. *See id.* at p. 58; *see also* Dkt. 22-1, p. 75. Yet there is no evidence Defendant Ferrell received or reviewed Plaintiff's kites. Further, the undisputed evidence shows Plaintiff did not otherwise discuss the threats against him with

Defendant Ferrell. *See* Dkt. 21, Ferrell Dec., ¶ 5; Dkt. 24, p. 10. Plaintiff asserts he did not discuss the threats with Defendant Ferrell in person because "she regularly made herself unapproachable/unavailable." *See* Dkt. 24, p. 10. Nonetheless, such conclusory allegations fail to show Defendant Ferrell acted with deliberate indifference towards any risk, or that she was aware of any such risk, to Plaintiff's health or safety.

Thus, the evidence does not show Defendants Gilbert or Ferrell acted with deliberate indifference towards any substantial risk of harm to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 832, 835 (a prison official cannot be held liable under the Eighth Amendment unless she "knows of and disregards" a risk to inmate health or safety, which requires more than "mere negligence"); *Fisher v. Stewart*, 37 Fed. Appx. 947, 949 (9th Cir. 2002) (prison official was not deliberately indifferent to inmate's safety where official did not learn until afterward of a substantial risk of harm to the inmate); *see also Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986) (affirming summary judgment as to certain defendants because the plaintiff "failed to come forward with facts showing that these defendants had any reason to believe he would be attacked").

In the Response, Plaintiff argues Defendants Gilbert and Ferrell should be held liable because they were in "supervisory" positions and DOC guards had a "pattern and practice of leaving their work posts" and no guard was in Plaintiff's unit during the altercation. *See* Dkt. 24, pp. 5-6, 9, 11-12, 34; *see also* Dkt. 22-1, p. 75. To state a claim under 42 U.S.C. § 1983, a plaintiff must show how a defendant caused the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The claim may not be brought on the sole theory that a supervisor is liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

REPORT AND RECOMMENDATION - 10

1  Rather, a plaintiff must show the individual defendant participated in or directed the alleged

2  harm, or knew of the harm and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d

3  1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).

4  Here, even assuming DOC guards were not in Plaintiff's unit at the time of the altercation

5  and otherwise could have prevented it, Plaintiff has not provided any allegations or evidence

6  showing Defendants Gilbert or Ferrell participated in or directed DOC staff to leave their posts.

7  Because Defendants Gilbert and Ferrell were not personally involved in, and had no casual

8  connection to, the guards' alleged actions, they cannot be held liable on theories of supervisory

9  liability. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere

10 allegation and speculation do not create a factual dispute for purposes of summary judgment.");

11 *see also Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990) (the purpose of summary

12 judgment "is not to replace conclusory allegations of the complaint or answer with conclusory

13 allegations of an affidavit").

14 The undersigned therefore finds there is no genuine issue of material fact regarding

15 Plaintiff's allegation that Defendants Gilbert and Ferrell violated Plaintiff's Eighth Amendment

16 rights by failing to protect him.

17     B.   Retaliation

18 Defendant Ferrell argues there is no genuine issue of material fact regarding whether

19 Plaintiff engaged in protected conduct and whether Defendant Ferrell engaged in retaliatory

20 conduct. Dkt. 18, pp. 7-10.

21 To prevail on a retaliation claim, a plaintiff must allege and prove the defendant retaliated

22 against him for exercising a constitutional right and the retaliatory action did not advance

23 legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*,

24

108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

1. *Evidence*

Plaintiff asserts that on July 13, 2016, he had a conversation with Defendant Ferrell regarding the physical altercation Plaintiff had with Inmate Fischer. *See* Dkt. 6, pp. 21-22, 39-40; Dkt. 22-1, p. 78-80; Dkt. 24, pp. 36-37. Plaintiff maintains that during this conversation, he informed Defendant Ferrell that he was having difficulty accessing his health records related to injuries he incurred from the altercation. *See* Dkt. 6, p. 21-22; Dkt. 22-1, p. 78-80. He contends Defendant Ferrell told him "to stop asking questions about his health and to forget about his request for the health information." Dkt. 6, p. 22; *see also* Dkt. 22-1, p. 79; Dkt. 24, p. 37. Thereafter, Defendant Ferrell issued Plaintiff three infractions related to the physical altercation with Inmate Fischer. *See* Dkt. 21-1, pp. 4-5, 11-12; *see also* Dkt. 6, p. 23; Dkt. 22-1, p. 80.

Defendant Ferrell does not recall any conversation with Plaintiff related to his medical records "and was not aware of his efforts to obtain records." Dkt. 21, Ferrell Dec., ¶ 12. She maintains whether inmates receive medical records is not within her "influence or control," and she "had no reason to prevent [Plaintiff] from obtaining medical records." *Id.* Defendant Ferrell asserts she cited Plaintiff with the infractions related to the physical altercation based "solely on [her]

findings in the investigation" on the physical altercation. *Id.* at ¶ 11; *see also* Dkt. 21-1, pp. 4-5, 11-12. The infractions Defendant Ferrell cited reference only the altercation between Plaintiff and Inmate Fischer and the follow-up investigation. *See* Dkt. 21-1, pp. 4-5, 11-12.

2.  *Analysis*

As explained above, to prevail on a retaliation claim, Plaintiff must show (1) Defendant Ferrell took an adverse action (2) because of (3) Plaintiff's protected conduct, and Defendant Ferrell's action (4) chilled Plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *See Rhodes*, 408, F.3d at 567-68.

Here, even assuming Plaintiff engaged in protected conduct, he has not provided a causal connection between the alleged protected conduct and the alleged adverse action. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (to state a retaliation claim, "the plaintiff must allege a causal connection between the adverse action and the protected conduct"). Plaintiff states Defendant Ferrell issued infractions against him because he continued to seek information about his health related to the physical altercation with Inmate Fischer. *See* Dkt. 22-1, pp. 79-80; *see also* Dkt. 6, pp. 22-23; Dkt. 24, pp. 19-21. Yet there is no evidence, beyond Plaintiff's conclusory allegation, that Defendant Ferrell issued the infractions against Plaintiff because he sought this health information. Rather, the evidence shows Defendant issued an infraction against Plaintiff based on her investigation about Plaintiff's altercation with Inmate Fischer. *See* Dkt. 21, Ferrell Dec., ¶¶ 11-12; Dkt. 21-1, pp. 4-5, 11-12.

Although Plaintiff and Defendant Ferrell dispute whether they discussed Plaintiff's efforts to obtain his medical records, this is not a genuine issue of material fact. Viewing the evidence in the light most favorable to Plaintiff, the evidence shows, at most, Defendant Ferrell told Plaintiff "to stop asking questions about his health and to forget about his request for the health

1  information." *See* Dkt. 6, p. 22. This statement alone does not show, however, Defendant Ferrell
2  infracted Plaintiff because he sought this information. Rather, Plaintiff fails to provide anything
3  more than speculation that Defendant Ferrell infracted him in retaliation for seeking his health
4  information. *See* Dkt. 6, p. 21-22; Dkt. 22-1, p. 78-80; Dkt. 24, p. 37; *see also California*
5  *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.
6  1987) (mere disagreement or the bald assertion stating a genuine issue of material fact exists does
7  not preclude summary judgment.); *Barstad v. Dep't. of Corrections*, 2015 WL 1867082, at *26-27
8  (W.D. Wash. April 23, 2015) (finding summary judgment in favor of the defendant where the
9  prisoner plaintiff failed to present admissible evidence showing the defendant issued infractions
10 based on a motivation to retaliate); *Watts v. Ruggiero*, 2016 WL 916233, at *20 (E.D. Cal. March
11 20, 2016) (granting summary judgment when a prisoner plaintiff provided no evidence to support
12 his allegation that he was retaliated against or to rebut the defendant's sworn statement).

13      Hence, Plaintiff has failed to overcome Defendant Ferrell's showing that there is no
14 genuine issue of material fact regarding Plaintiff's First Amendment retaliation claim.

15      C.  <u>Qualified Immunity</u>

16      Defendants further argue they are entitled to qualified immunity on Plaintiff's claims.
17 Dkt. 18, pp. 12-13. Because the Court recommends granting the Motion due to a lack of any
18 constitutional violation, the Court declines to consider Defendants' qualified immunity
19 argument.

20      D.  <u>State Law Claims</u>

21      Lastly, Plaintiff makes brief statements that he is suing Defendants Gilbert, Ferrell, and
22 Blumberg under the Washington State Constitution for their alleged deliberate indifference and
23 retaliation. *See* Dkt. 6, pp. 28-29. Nonetheless, these allegations from Plaintiff are conclusory.
24

*See id.* As such, to the extent Plaintiff is attempting to raise claims under the Washington State Constitution, the Court finds Plaintiff has failed to state any claim. Furthermore, even if Plaintiff could state claims of violations under the Washington State Constitution, none of the factors under the pendent jurisdiction doctrine support exercising supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Artis v. District of Columbia*, 583 U.S. ----, 138 S.Ct. 594, 597-98 (citing 28 U.S.C. § 1367(c)) (2018) (ordinarily, "when a district court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state claims, as well). Thus, the Court recommends dismissal of any claims pursuant to the Washington State Constitution without prejudice.

### IV.     Conclusion

For the above stated reasons, the Court finds Plaintiff has failed to overcome Defendants' showing that there is no genuine issue of material fact remaining in this case. Accordingly, the Court recommends Defendant's Motion (Dkt. 18) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 21, 2019, as noted in the caption.

Dated this 3rd day of June, 2019.

David W. Christel
United States Magistrate Judge